UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| INNOVATIVE MANPOWER SOLUTIONS, L.L.C. | * * * | CIVIL ACTION NO. |
| | * | JUDGE |
| Plaintiff, | * * | MAG. JUDGE |
| VERSUS | * * | JURY TRIAL DEMANDED |
| IRONMAN STAFFING, L.L.C. and THADDEUS PETE MARCELL, JR. | * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiff and complains of Defendants as follows:

### NATURE OF THE CASE

1.

This is an action against Defendants for false designation of origin and unfair competition, injury to business and dilution, breach of fiduciary duty, breach of employment agreement, breach of confidentiality agreement, unfair and deceptive trade practices, and misappropriation of trade secrets.

### THE PARTIES

2.

Plaintiff Innovative Manpower Solutions, L.L.C. ("Innovative") is a Louisiana limited liability company with its principal place of business in Lafayette Parish, Louisiana.  Innovative is a subsidiary of dii, L.L.C., and is an affiliate of Dynamic Industries, Inc.

3.

On information and belief, Defendant Ironman Staffing, L.L.C. ("Ironman") is a Louisiana limited liability company with a registered office at 201 Riverside Drive, Berwick, Louisiana 70342, and with a principal place of business at 202 Bowman Street, Berwick, Louisiana 70342.

4.

On information and belief, Defendant Thaddeus Pete Marcell, Jr. ("Marcell") is an individual residing at 201 Riverside Drive, Berwick, Louisiana, who is the Manager and principal owner of Defendant Ironman, and is the conscious, dominant, and active force behind the wrongful acts of Defendant Ironman, which wrongful acts Marcell committed for the gain and benefit of Ironman and for his own individual gain and benefit.

**JURISDICTION AND VENUE**

5.

This court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337 and 1338(a) and 15 U.S.C. §1121, as this matter arises in part under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*.; under 28 U.S.C. § 1338(b), as the claims of unfair competition are joined with substantial and related claims under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*.; and under 28 U.S.C. § 1367 for the state law claims, as those claims are so related to the federal claims that they form part of the same case or controversy.

6.

Venue is proper in this district under 28 U.S.C. § 1391(b).

## BACKGROUND

7.

Innovative is engaged in the business of manpower services, namely, providing skilled labor, such as welders, and carpenters, to companies engaged in the oil and gas industry.

8.

By letter dated December 23, 2008, Innovative offered to employ Marcell in the position of "Manager" of Innovative.  The December 23, 2008 letter sets forth general terms and conditions of Marcell's employment with Innovative.  Marcell agreed to the terms of the offer by signing the offer letter on December 23, 2008 (the December 23, 2008 offer letter will be referred to herein as the "Employment Agreement"). The Employment Agreement is attached hereto and incorporated herein for all purposes as Exhibit "A".

9.

Section 12 of the Employment Agreement prohibited Marcell from engaging "in any other gainful employment, business or activity without the written consent of [Innovative]." This Section of the Employment Agreement also prohibited Marcell from assisting "any person or organization in competing with [Innovative], in preparing to compete with [Innovative], or in hiring any employees of [Innovative]."

10.

Also on December 23, 2008, Marcell executed a Statement of Understanding and Agreement (Reference:  CMP 401:  Confidentiality) (the "Confidentiality Agreement"). The Confidentiality Agreement is attached hereto and incorporated herein for all purposes as Exhibit "B".

11.

By executing the Confidentiality Agreement, Marcell made the following affirmations:

a.     Section 1 – "I am responsible for maintaining the confidentiality of the information with which I work. This includes keeping information secure and accessible only to those who have rights to this information."

b.     Section 2 – "I am accountable for maintaining the highest standards possible for managing Company and individual information in a secure and professional manner."

c.     Section 3 – "I will not disclose confidential or proprietary information in any manner of communication (e.g., electronic, written and oral communication, or other means of disclosure) without authorization of senior management."

d.     Section 4 – "If at any time, data under my care and responsibility is thought to be compromised, I will immediately notify Human Resources, General Counsel, or other member of senior management. I understand that intentionally accessing user data and information or causing information to be compromised or improperly released through my negligence will be grounds for immediate dismissal."

e.     Section 5 – "During the course and scope of my employment with the Company, I understand that I may create works or generate original material. I further understand that all such works and material are the property of the Company and may not be disclosed or removed from the Company or used for any non-Company-related purpose without authorization from senior management."

12.

Innovative is known in the staffing industry under the acronym "IMS," which serves as Innovative's service mark identifying and distinguishing its services from those of others. Innovative's advertisements, stationary, agreements, and advertising materials use the service mark IMS.

13.

Innovative's service mark IMS has been used by Innovative in interstate commerce and in the State of Louisiana at least as early as 2008.

14.

Innovative's service mark IMS constitutes the lawful, valuable, and exclusive property of Innovative, and as a result of the high quality of Innovative's services and promotion thereof, Innovative's service mark has become an intrinsic and essential part of the valuable goodwill and property of Innovative, and is recognized as a symbol identifying and distinguishing Innovative's services.

15.

As a result of Innovative's efforts to develop its brand and reputation, it has enjoyed steady growth within the industry and has developed a loyal customer base.

16.

Marcell, as Manager of Innovative, was provided with confidential information and corporate secrets, including information regarding Innovative's skilled laborers and its customers that Innovative had spent considerable time and money developing and protecting.  Marcell was also provided financial information of Innovative, including profit margins on the employees Innovative supplied to its customers.  Innovative has taken reasonable steps to protect its trade secrets and confidential and proprietary business information from public dissemination. Innovative derives independent economic value from its confidential and proprietary information not being generally known to and readily ascertainable by proper means by other persons who can obtain economic value from its use and disclosure.

17.

In order to provide the services its customers require, Innovative must hire and cultivate a skilled and knowledgeable workforce.  Innovative delegated to Marcell, as the Manager of the

company, the duty of identifying and hiring Innovative's workforce.  Marcell had complete control over the hiring and firing of employees of Innovative.  As of June 30, 2012, Innovative's workforce had grown to approximately 135 skilled laborers and about 5 staff personnel.

18.

Each of the skilled laborers and staff personnel were employees of Innovative, and Innovative paid each employee on a weekly basis.

19.

Generally, Innovative provides the services of its skilled laborers to its customers under the terms of a master service agreement.  Marcell, as Manager of and on behalf of Innovative, participated in the negotiation of these master service agreements, and he had access to all of Innovative's master service agreements.  Innovative invoiced its customers for the services of Innovative's skilled laborers in accordance with these master service agreements.

## ACTS OF DEFENDANTS

20.

By email dated Friday, June 29, 2012, at 4:45 pm, Marcell informed his superiors that he was resigning as manager of Innovative; the effective date of his resignation was July 1, 2012.

21.

In successive emails to his superiors dated June 29, 2012, Marcell did not disclose his new employment, but stated that he "decided to pursue other opportunities," and that he and his wife were "still talking about the options."  Attached hereto and incorporated herein *in globo* as Exhibit "C" are Marcell's emails dated June 29, 2012.

22.

Given the sudden departure of the Manager of Innovative, the Controller and Human Resource Director for the company were dispatched to Innovative's headquarters first thing Monday, July 2, 2012, in order to assure that the employees of Innovative remained on the jobs for the customers of Innovative and to insure the continued operations of Innovative.

23.

However, the Controller and Human Resource Director were greeted with an envelope in Innovative's office which contained the resignations of virtually all of Innovative's employees. The only employees who did not resign were those who were currently working for an affiliate of Innovative, Dynamic Industries, Inc.

24.

The resignation notices were not prepared at the direction of the individual employees of Innovative, or with each employees' knowledge and consent.  Rather, on information and belief, these resignations were prepared by or at the direction of Marcell.

25.

On Monday, July 2, 2012, Marcell informed Innovative representatives that he had formed his own company, Defendant Ironman, and that all of the terminated employees of Innovative were now employees of Ironman.

26.

Additionally, on July 2, 2012, Marcell informed representatives of Innovative that all of Innovative's customers were no longer customers of Innovative, but were now customers of Marcell's new company, Ironman.

27.

As a result of Marcell's actions, all of Innovative's former skilled laborers reported to work on July 2, 2012 to the same Innovative customer for which they were performing services on June 29, 2012, but as of July 2, 2012, were now providing those services as employees of Ironman, and the revenues generated from the work of those employees now belonged to Ironman, not Innovative.

28.

On information and belief, many if not all of Innovative's former employees did not know as of July 1, 2012 that their employment with Innovative had been terminated and that as of July 2, 2012, they were working as employees of Ironman.  On information and belief, Marcell concealed these facts from Innovative's employees and his supervisors in order to assure a smooth transition of those employees from Innovative to Ironman, and so as to avoid any disruption of the work those employees were performing for Innovative's former, but now Ironman's, clients and customers.

29.

As a result of the foregoing, Defendant Marcell, in less than three days (two of which were Saturday and Sunday), (i) terminated his employment as Manager of Innovative, (ii) terminated or caused the termination of most of the employees of Innovative, (iii) commenced operations as a new company, Defendant Ironman, (iv) hired Innovative's former employees without the knowledge of most of them, (v) negotiated and entered master service agreements on behalf of his new company, Ironman, with all of Innovative's former customers, and (vi) seamlessly continued operations for Innovative's customers with Innovative's former employees

through deception, all for the sole benefit of Defendants Marcell and Ironman and to the detriment of Innovative.

30.

As a result of Defendants' conversion of Innovative's customers and employees for their own personal benefit and gain, Innovative's thriving and highly profitable business has been gutted.

31.

On information and belief, while Marcell was still employed with Innovative, he formed his new company, Defendant Ironman, and registered the domain name "www.ironmanstaff.com."

32.

Indeed, according to the online records of the Louisiana Secretary of State, Ironman was formed on April 30, 2012, and Marcell is named as the Manager and Registered Agent of the company.

33.

On May 1, 2012, Marcell registered the domain name "www.ironmanstaff.com."

34.

Thus, contrary to Marcell's deceptive statements to Innovative following his resignation that he was looking at various options, he in fact had settled on one option, that of converting Innovative's employees and customers to his own company, Ironman.

35.

Evidence that Marcell was already conducting operations on behalf of his new company, Ironman, while still employed with Innovative is demonstrated, in part, from the resignation

which he forwarded by email.  On June 28, 2012, Marcell used his new Ironman email address to send the resignation to himself as Manager of Innovative at his Innovative email address, a full three days before the effective date of his resignation; Marcell then forwarded on June 29, 2012, his resignation using his Innovative email address to representatives of the owners of Innovative. See Exhibit "D," which is attached hereto and incorporated herein for all purposes.

36.

Further, on information and belief, while still employed by Innovative, Marcell solicited and recruited Innovative's staff employees to accept similar positions at his new company, Ironman.

37.

Further, on information and belief, while still employed by Innovative, Marcell informed various persons, including customers and vendors of Innovative, that he was starting his own company that would compete with Innovative, and was seeking to divert their business to his new company.

38.

On information and belief, Marcell, while still employed with Innovative, and on behalf of his new company, Ironman, negotiated master service agreements with Innovative's customers.

39.

Additionally, Defendants Ironman and Marcell are doing business under and are using the term "IMS," which is identical to Innovative's service mark IMS.  Attached hereto and incorporated herein for all purposes *in globo* as Exhibit "E" and "F" are exemplars of

Innovative's materials bearing the mark IMS and Defendants' business card bearing the term IMS, respectively.

40.

Defendants' adoption and use of the term IMS in connection with its business services has been with actual knowledge of Innovative's preexisting and superior rights in Innovative's service mark.

41.

Defendants are using the term IMS in interstate commerce and this judicial district in such a manner as to imitate Innovative's service mark, which is distinctive to Innovative.

42.

Defendants' use of the term IMS, which is confusingly similar to Innovative's service mark, is likely to cause confusion, mistake, or deception among the trade and the purchasing public as to the source, origin, and sponsorship of Defendants' services.  Furthermore, on information and belief, the former employees of Innovative may believe the IMS they are currently working for is not Ironman but Innovative.

43.

Defendants' use of the term IMS in interstate commerce and this judicial district has created the likelihood of injury to Innovative's business reputation, and the dilution of the distinctive quality of Innovative's service mark.

44.

On information and belief, Defendants' use of the term IMS is intentional, knowing, and willful and for the purpose of misappropriating Innovative's business and goodwill.

45.

On information and belief, Defendants have misappropriated, used, and disclosed Innovative's confidential and proprietary information to create, almost overnight, a fully functioning business with a complete workforce and customers.

46.

Defendants' acts have caused and are continuing to cause irreparable injury to Innovative, for which Innovative has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

47.

On information and belief, Marcell conspired with his office administrative assistant and field supervisors to execute the counts complained of below.

## COUNT I

## FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

48.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 47 of this Complaint.

49.

Defendants' acts as described above constitute ongoing, willful, deliberate, and intentional false designation of origin and/or false and misleading representation in violation of 15 U.S.C. § 1125(a) for which Innovative is entitled to damages as provided by law and injunctive relief as set forth in the Prayer for Relief below.

## COUNT II

## STATE INJURY TO BUSINESS REPUTATION

50.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 49 of this Complaint.

51.

Defendants' acts as described above constitute ongoing, willful, deliberate, and intentional dilution of the distinctive quality of Innovative's service mark and have created a likelihood of injury to Innovative's business reputation in violation of La. R.S. 51:223.1 for which Innovative is entitled to injunctive relief and damages as provided by law as set forth in the Prayer for Relief below.

## COUNT III

## BREACH OF FIDUCIARY DUTY

52.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 51 of this Complaint.

53.

Pursuant to Louisiana law, Marcell owed a fiduciary duty to his employer, Innovative, while employed, to be loyal and faithful to Innovative's business interests.

54.

Marcell's actions while employed by Innovative, as set forth above, breached the fiduciary duty he owed to Innovative.  Marcell is therefore liable to Innovative for all damages caused Innovative by his breach of fiduciary duty.

## COUNT IV

### BREACH OF EMPLOYMENT AND CONFIDENTIALITY AGREEMENTS

55.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 54 of this Complaint.

56.

Marcell's actions while employed by Innovative, as set forth above, breached his obligation under the Employment Agreement "not to engage in any other gainful employment, business or other activity."

57.

Marcell's actions while employed by Innovative, as set forth above, also breached his obligation under the Employment Agreement not to "assist any person or organization in competing with [Innovative] or hiring any employees of [Innovative]."

58.

Marcell's actions while employed by Innovative also breached his obligations under the Confidentiality Agreement, as set forth above.

59.

Marcell, therefore, is liable to Innovative for all damages as provided by law and/or contract suffered by Innovative as a result of  his breach of both the Employment Agreement and the Confidentiality Agreement.

## COUNT V

## UNFAIR COMPETITION/UNFAIR AND DECEPTIVE ACTS UNDER STATE LAW

60.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 59 of this Complaint.

61.

Defendants' acts as described above constitute an unfair method of competition and unfair and deceptive trade practices in violation of La. R.S. 51:1401 et seq., for which Innovative is entitled to damages as provided by law, and injunctive relief as set forth in the Prayer for Relief below.

## COUNT VI

## MISAPPROPRIATION OF TRADE SECRETS

62.

Innovative adopts, realleges, and incorporates by reference and for all purposes all of the allegations contained in Paragraphs 1 – 61 of this Complaint.

63.

Defendants' acts as described above constitute intentional and willful misappropriation of Innovative's trade secrets and other confidential and proprietary commercial information in violation of La. R.S. 51:1431 *et seq*., for which Innovative is entitled to damages as provided by law and injunctive relief as set forth in the Prayer for Relief below.

## JURY DEMAND

64.

Innovative requests a trial by jury of all issues so triable herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Innovative Manpower Solutions, L.L.C., prays for judgment in its favor and against Defendants, Thaddeus Pete Marcell, Jr. and Ironman Staffing, L.L.C., jointly, severally, and solidarily, as follows:

1.    For preliminary and permanent injunctive relief prohibiting Defendants and their respective owners, members, directors, officers, agents, employees, representatives, successors, and assigns, and all those acting in concert with any of them from:

    a.    Using the term IMS or any other word, symbol, design, term, and mark that is a colorable imitation of or confusingly similar to Plaintiff's service mark, in connection with the sale, offering for sale, advertising, promotion, or other marketing whatsoever of manpower services; and

    b.    Misappropriating, using, or disclosing Plaintiff's trade secrets and other confidential and proprietary commercial information.

2.    For an order directing Defendants to:

    a.    Deliver up for destruction all labels, signs, prints, instructions, packages, wrappers, receptacles, advertisements, letterheads, business cards, bill heads, and any other printed matter of any nature whatsoever, as well as all plates, molds, matrices, and any other means of making or fixing same, and any other materials in the possession of Defendants bearing or

displaying the term IMS or any other colorable imitation of Plaintiff's service mark; and

b.      Return to Plaintiff all materials in any form, including documents and electronic data, which embody or contain Plaintiffs' trade secrets and other confidential and proprietary commercial information.

3.      For damages in the sum to which Plaintiff is entitled, as may be found reasonable and appropriate in the premises, together with legal interest from date of demand.

4.      For an accounting and award to Plaintiff of all profits realized by Defendants from their acts of false designation of origin, false descriptions and representations, and unfair competition.

5.      For all damages, penalties, attorney fees, costs and injunctive relief available to Plaintiff in accordance with 15 U.S.C. §§ 1116, 1117, and 1118.

6.      For all damages, penalties, attorney fees, costs, and injunctive relief available to Plaintiff in accordance with La. R.S. 51:223.1, 51:1401 *et seq.* and 51:1431 *et seq.*

7.      For an award of trebled monetary damages or such other amount of punitive damages as the trier of fact finds to be appropriate under the circumstances, and recovery of Plaintiff's costs and attorney fees associated with this action.

8.      For reasonable attorney fees and all costs not otherwise prayed for above, but as allowed by law.

9.      For all general and equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

JONES WALKER

Dated: July 9, 2012                    s/Donald W. Washington_____
                                       Robert L. Waddell (23586)
                                       Donald W. Washington (21402)
                                       Blair B. Suire (32708)
                                       600 Jefferson Street, Suite 1600
                                       Lafayette, Louisiana 70501
                                       Tel.:    (337) 593-7600
                                       Fax:     (337) 593-7601
                                       Email: rwaddell@joneswalker.com
                                               dwashington@joneswalker.com
                                               bsuire@joneswalker.com

                                       ATTORNEYS FOR PLAINTIFF,
                                       INNOVATIVE MANPOWER
                                       SOLUTIONS, L.L.C.